NOT DESIGNATED FOR PUBLICATION

No. 115,201

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JULIUS LELAND ORTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed August 4, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*: Julius Leland Orton, a resident in the Sexual Predator Treatment Program (SPTP) at Larned State Hospital, appeals following his conviction for a single count of traffic in contraband in a care and treatment facility. Orton argues the district court erred by (1) denying his motion to suppress evidence and (2) denying his motion in limine to exclude evidence that he was a resident of the SPTP. Finding no error, we affirm Orton's conviction.

FACTS

On September 9, 2014, Charity Irvin, a mental health disability technician at the Larned SPTP, was instructed to conduct a search of Orton's room. Orton was a "very, very noncompliant high diabetic" and had been placed on a diabetic diet. Irvin was told to search for sugary food items because Orton's blood sugar had been running high. Irvin searched Orton's entire room extensively and located several sugary food items. As part of her search, Irvin looked through DVD cases that were located on a shelf next to Orton's television. Irvin discovered an adult entertainment DVD titled "Desperately Seeking Seka" inside one of the cases. Orton was present during part of the search. When asked about the DVD, Orton claimed that it belonged to another resident and that he had obtained the required team treatment approval to borrow it. But Orton was unable to provide any documentation of such approval. It was later discovered that the DVD depicted both males and females in a complete state of undress engaging in sexual activity. Possession of this DVD violated provisions of the SPTP Resident Handbook, which prohibited possession of "[u]nacceptable sexual materials."

The State charged Orton with traffic in contraband in a correctional institution or care and treatment facility. Prior to trial, Orton filed a motion to suppress the DVD evidence, alleging that residents of the SPTP retained an expectation of privacy in their rooms and the warrantless search of his room unreasonably infringed on his right to privacy in violation of the Fourth Amendment to the United States Constitution. In response, the State asserted that any expectation of privacy retained by Orton should be considered diminished "by virtue of his civil commitment to SPTP and it must therefore yield to SPTP's paramount interest in institutional security."

Following a hearing, the district court denied Orton's motion to suppress. In its ruling, the court focused on whether Orton had standing to contest the search based on a reasonable expectation of privacy in his room. The court concluded:

"The fact that staff has access to Mr. Orton's room and the fact that Mr. Orton knew of the contraband requirements and knew of the policy to conduct shakedown searches, the location of the DVD within Mr. Orton's room all point to the fact that Mr. Orton under a totality of the circumstances of this case did not have a subjective expectation of privacy in his room. Furthermore the objectively reasonable standard is also failed to be met, in that the safety and security of the institution would trump Mr. Orton's individual privacy interest or expectations. The issue of safety and security for Mr. Orton, other residents and staff is a paramount concern. Additionally the handbook is in place to provide notice of what is objectively reasonable as a matter of law. Clearly DVDs may well be permissible and be an intended use for the personal use of a resident, but a DVD consisting of pornographic material or certainly representing as contraband is not intended use of a DVD product. Therefore the objectively reasonable standard would fail as well."

Thereafter, Orton filed a motion in limine asking the district court to exclude evidence that he had been civilly committed to Larned's SPTP, arguing that such evidence was irrelevant and prejudicial. After considering the arguments set forth in support of the motion, the district court denied the request, ruling that evidence of Orton's civil commitment to the SPTP could be admitted at trial because it constituted an element of the crime that the State was required to prove.

The case proceeded to trial, and a jury convicted Orton as charged. The district court sentenced Orton to 43 months in prison with a postrelease supervision term of 24 months.

ANALYSIS

Orton raises two arguments on appeal. First, he argues the district court erred by denying his motion to suppress evidence. Second, he contends the court erred by denying his motion in limine. We address each of Orton's allegations in turn.

1. *Motion to suppress*

Orton argues that the district court erred by denying his motion to suppress evidence. First, Orton contends the district court erred in holding he did not have standing to challenge the search of his room, which requires both a subjective and objectively reasonable expectation of privacy in his room. Orton further contends the district court erred in finding that the search itself was reasonable notwithstanding the fact that Irvin exceeded the original scope of the search—to look for prohibited food items—when she looked through the DVDs.

At trial, Orton raised a continuing objection to the district court's suppression ruling, thereby preserving the issue for appeal. See *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014) (when district court denies motion to suppress, moving party must object to introduction of that evidence at time it was offered at trial to preserve issue for appeal). Where, as here, the material facts to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. See *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The Fourth Amendment protects against unreasonable searches and seizures. *State v. Brittingham*, 296 Kan. 597, 601, 294 P.3d 263 (2013). But the Fourth Amendment is not implicated when the person challenging the search had no reasonable or legitimate expectation of privacy in the place that was searched. *State v. Robinson*, 293 Kan. 1002, 1013, 270 P.3d 1183 (2012). To establish a legitimate expectation of privacy, a defendant must demonstrate a subjective expectation of privacy in the area searched and that the expectation was objectively reasonable. 293 Kan. at 1014. If a party fails in this burden, he or she does not have standing to bring a Fourth Amendment challenge. See 293 Kan. at 1016.

4

Court rulings concerning the expectation of privacy of participants in the SPTP have evolved with the passage of time. First, in *Merryfield v. Turner*, No. 100,059, 2008 WL 4239118, at *3 (Kan. App. 2008) (unpublished opinion), a panel of our court extended the longstanding rule of no expectation of privacy by prisoners to participants in the SPTP. Four years later, a different panel of our court ruled that in light of an intervening Eighth Circuit ruling dealing with pretrial detainees, participants in the SPTP retain their Fourth Amendment right to be free from unreasonable searches. *Bailey v. Howard*, No. 106,573, 2012 WL 1072816, at *3 (Kan. App. 2012) (unpublished opinion). But the court went on to hold in that case that Bailey's limited expectation of privacy in his room did not outweigh the State's compelling interest in searching for and confiscating contraband for treatment and security purposes. 2012 WL 1072816, at *6. In 2014, another panel of this court issued two separate opinions on the same day that dealt with the issue differently than either *Merryfield* or *Bailey*. See *State v. Case*, No. 109,339, 2014 WL 349605, at *11 (Kan. App. 2014) (unpublished opinion), and *State v. Chubb*, No. 109,340, 2014 WL 349610, at *6 (Kan. App. 2014) (unpublished opinion). In both cases, the panel ruled that personal privacy expectations should be evaluated by applying the *Robinson* two-part test to all of the facts and circumstances in each individual case. In *Robinson*, our Supreme Court held that in order to establish a legitimate expectation of privacy, a defendant must demonstrate a subjective expectation of privacy in the area searched and that the expectation was objectively reasonable. 293 Kan. at 1014. If a defendant fails in this burden, he or she does not have standing to challenge the search under the Fourth Amendment. 293 Kan. at 1016. The parties agree that the *Robinson* test is applicable here.

At the suppression hearing, the State presented testimony from Sean Wagner, the Larned SPTP Director. Orton testified for the defense.

Wagner testified that each SPTP resident has their own room, which is approximately 8 feet by 10 feet. Each resident has a key to his or her room. Other patients

5

are not allowed inside the rooms, and no one else can access the rooms except for staff. Wagner explained that the residents have different levels of privilege. Orton had the highest privilege level, meaning that he could come and go within the unit, he did not have a curfew, he was permitted to have a television and access to cable, and he could order food and other property not on the contraband list.

Wagner further testified that each SPTP resident is provided with a Resident Handbook upon arrival. The handbook provides reference and guidance for the residents' daily living and specifically lists items that residents are not allowed to possess. The handbook also describes the ability of the SPTP staff to search individual resident rooms for the purpose of safety and security. Wagner stated that this information would have been provided to Orton. Wagner testified that the SPTP staff do periodic room searches and will seize any unauthorized contraband. These searches may be performed randomly or when the staff hears about the presence of contraband or of something that might compromise the safety and security of the facility and staff. Wagner explained that Orton's room was searched because his blood sugar had been extremely high for some time, despite the fact that a doctor had placed him on a diabetic diet and he had been restricted from purchasing outside food.

Orton testified that he lived alone in his room. The room had a locker, a desk with shelving, a shelf above the locker for a television and stereo, a bed, and a toilet. The door locked automatically when he left and could only be accessed by a key. Orton was the only person with access to the room, other than staff. Orton stated that he had a green badge, which was the highest privilege level. Orton could request a pass to visit other residents, had no curfew, could order food from different vendors, and could have a television, a stereo, and video games in his room. Orton kept his DVDs in a carousel holder on the shelf above his television, which was in plain view in his room. Orton expressed a belief that he had privacy in his room because no one else was allowed inside and staff was only supposed to be there in his presence. Orton stated that he had been

present for searches of his room. Orton admitted that he had observed staff searches of other residents' rooms, he was aware that searches are generally a part of the SPTP operation, and he was familiar with the SPTP handbooks. Orton stated that he had purchased the food items containing sugar before he was placed on a dietary restriction but agreed that they were in his possession. Orton conceded that he was not allowed to possess certain items, including pornographic material and other listed contraband.

Based on this testimony, the district court held that Orton lacked standing to challenge the search. Specifically, the court found Orton lacked both a subjective and an objectively reasonable expectation of privacy in his room. "An appellate court evaluates a defendant's subjective expectation of privacy as a question of fact to be reviewed based on the evidence presented, while the determination of whether that subjective expectation is objectively reasonable is considered as a question of law. [Citation omitted.]" *Case*, 2014 WL 349605, at *5.

a. *Subjective expectation of privacy*

"A defendant invoking the protection of the Fourth Amendment 'must demonstrate that he [or she] *personally* has an expectation of privacy in the place searched.'" *United States v. Maestas*, 639 F.3d 1032, 1035 (10th Cir. 2011). Orton argues that he had a subjective expectation of privacy in his room due to the fact that certain civil liberties he was denied in prison had been restored in the SPTP and that his release from prison enhanced his right to be free from unreasonable searches and seizures. To that end, Orton notes that he had the ability to secure his room against entry by others with a key that was provided by the facility.

Regardless of Orton's freedom within the facility and his ability to secure his room, SPTP staff had the ability to access the residents' rooms electronically at any time. The DVD in question was found on the shelf next to Orton's television, apparently in

7

plain view. Although the DVD did not appear to be visible until Irvin opened the case, the Resident Handbook provides that staff had the ability to search residents' rooms "at **any time** without the resident's presence, knowledge or permission" in order "to deter the introduction, fabrication, and/or possession of contraband and/or prohibited items." Orton testified that he was familiar with the SPTP handbooks, that he knew searches occurred within the SPTP, and that he had been present for searches of his room and other residents' rooms. Taken together, there is substantial competent evidence to support the conclusion that Orton could not have had a reasonable expectation of privacy in his room.

b. *Objectively reasonable*

But even if Orton did have a subjective expectation of privacy in his room, he cannot show that his belief was objectively reasonable. Under the second step of the test for standing, we must ask whether Orton's subjective expectation of privacy "is one that society is prepared to recognize as reasonable." See *State v. Huber*, 10 Kan. App. 2d 560, 566, 704 P.2d 1004 (1985). A subjective expectation is reasonable "if it arises from a source 'outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *United States v. Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999).

Relying on provisions in the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq*., Orton suggests that his personal expectation of privacy in his room was objectively reasonable. See K.S.A. 2016 Supp. 59-29a22(b)(9) (SPTP residents are to be housed in a facility "designed to afford patients with comfort and safety, to promote dignity and ensure privacy"); K.S.A. 2016 Supp. 59-29a22(b)(18) (requiring that patients be "provided a reasonable amount of individual storage space" for possession of personal property); K.S.A. 2016 Supp. 59-29a22(b)(19) (affording "[r]easonable protection of privacy in such matters as toileting and bathing").

8

But Orton's argument ignores the language in K.S.A. 2016 Supp. 59-29a22(b)(18), which permits residents "[t]o possess personal property in a reasonable amount, as long as the property complies with state laws and facility rules and policies. . . . In no event shall a person be allowed to possess or store contraband." Moreover, there is nothing in the KSVPA that provides SPTP residents with complete privacy or otherwise states that residents' rooms will not be searched. Any privacy contemplated by the KSVPA would not outweigh the State's interest in maintaining a safe, secure facility. As previously discussed, the Resident Handbook allows SPTP staff to search residents' rooms at any time in order to deter the introduction or possession of contraband or prohibited items. Given the staff's ability to conduct a search at any time, society will not recognize Orton's subjective expectation of privacy in his room as reasonable.

Because Orton cannot demonstrate a subjective expectation of privacy in his room or that the expectation was objectively reasonable, he lacked standing to challenge the search under the Fourth Amendment. Since Orton did not have standing to object to the search, whether the warrantless search of Orton's room was unreasonable under the circumstances is moot. See *Robinson*, 293 Kan. at 1014, 1016. As a result, the district court properly denied Orton's motion to suppress.

2. *Motion in limine*

Orton argues the district court erred by denying his motion in limine to exclude evidence that he was a resident of the SPTP.

The State charged Orton with a single count of traffic in contraband in a correctional institution or care and treatment facility, which is defined as "without the consent of the administrator of the correctional institution or care and treatment facility . . . [i]ntroducing or attempting to introduce any item into or upon the grounds of any correctional institution or care and treatment facility." K.S.A. 2016 Supp. 21-5914(a)(1).

The jury was instructed that in order to find Orton guilty of this crime, the State was required to prove:

"1. The defendant had the unauthorized possession of a DVD titled <u>Desperately Seeking Seka</u> while in a care and treatment facility.
"2. The defendant did so intentionally, knowingly, or recklessly.
"3. The defendant acted without the consent of the administrator of the care and treatment facility.
"4. This act occurred on or about the 9th day of September, 2014, in Pawnee County, Kansas."

The district court denied Orton's motion in limine on grounds that evidence of his commitment to the SPTP was admissible because it constituted an element of the crime the State was required to prove. The court informed the parties, however, that if defense counsel requested it, the court would give a limiting instruction to the jury regarding this evidence.

Before the trial started, defense counsel renewed Orton's objection to introduction of evidence that Orton was a resident of the SPTP, which was sufficient to preserve the issue for appeal. See *State v. Sprague*, 303 Kan. 418, 432-33, 362 P.3d 828 (2015) (when district court denies motion in limine and evidence is introduced at trial, moving party must make timely and specific objection at trial to admission of evidence to preserve issue for appeal). The district court again overruled Orton's objection, noting that the State's evidence would involve policies specific to the SPTP and that "there is really no way around the fact that Mr. Orton is presently a resident of that program at Larned State Hospital." At defense counsel's request, the district court provided the following limiting instruction to the jury, both during the court's opening remarks and after the close of evidence:

10

"The parties agree that the Court has previously ruled as a matter of law that the specific nature of the criminal history of Julius Leland Orton is not relevant to determination of the issues presented in this case, nor is the reason that Mr. Orton was a resident of the Sexual Predator Treatment Program on September 9, 2014, a relevant fact."

An appellate court applies a similar review of a decision regarding a motion in limine to that of a decision regarding an evidentiary ruling. The court must first determine the relevance of the challenged evidence, *i.e.*, whether the evidence is probative and material. The district court's determination that the evidence is probative is reviewed for abuse of discretion; the court's determination that the evidence is material is subject to de novo review. *State v. Frierson*, 298 Kan. 1005, 1015, 319 P.3d 515 (2014). If the evidence is relevant, the appellate court then determines, de novo, which rules of evidence or other legal principles govern the admission of the evidence in question. Appellate review of the district court's application of the pertinent legal rules and principles depends upon whether the rule or principle permits the district court to exercise its discretion or whether the rule raises questions of law. Next, the appellate court must consider whether the district court abused its discretion in weighing the probative value of the evidence against the potential that the evidence will unfairly and prejudicially surprise a party who has not had reasonable opportunity to anticipate the evidence. 298 Kan. at 1015-16.

a. *Relevance*

Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b); *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). This definition encompasses two elements:  a materiality element and a probative element. Evidence is material when the fact it supports is in dispute or in issue in the case. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). Evidence is probative if it has any tendency to prove

11

any material fact. *State v. Dupree*, 304 Kan. 43, 63, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016).

Evidence that Orton was a resident of the SPTP was both material and probative because it aided in establishing an essential element of the crime—that Orton was in a care and treatment facility. Orton does not dispute that in order to prove its case, the State was required to prove that he was in a care and treatment facility. But Orton claims that the jury did not need to know that he had specifically been committed to the SPTP, as the State was not required to prove that he was a sexual predator.

Contrary to Orton's argument, evidence of his commitment to the SPTP in particular was relevant because the State was required to prove that Orton's possession of the DVD in question was unauthorized and without consent of the administrator of the care and treatment facility. This necessarily required witness testimony and other evidence of policies specific to the SPTP, including the relevant provisions in the Resident Handbook that defined the DVD in question as contraband and prohibited its possession by SPTP residents.

b. *Probative value vs. prejudicial impact*

Given that evidence regarding Orton's commitment to the SPTP was relevant, we must next determine whether the district court properly found that the evidence was admissible. Even if evidence is relevant, a district court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. See *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). To demonstrate an abuse of discretion, it is

not enough to show that the evidence was prejudicial; rather, the litigant challenging the admission of the evidence must "show that unfair or undue prejudice arising from the admission of the evidence substantially outweighed its probative value." See *State v. Vasquez*, 287 Kan. 40, 53, 194 P.3d 563 (2008).

Orton claims that the probative value of evidence that he was a resident of the SPTP was outweighed by the prejudice it would cause him because it effectively informed the jury that he had been convicted of a sex offense, branded him a "'sexual predator,'" and implied that he was a threat to the community. Orton asserts that evidence of his commitment to the SPTP allowed the jury to make inferences against him that were irrelevant to their decision.

As earlier stated, this evidence was clearly probative because it established both that Orton was a resident of a care and treatment facility and that the DVD constituted contraband not permitted by the SPTP, which were relevant material facts in dispute. Although evidence of Orton's commitment to the SPTP was arguably prejudicial, it cannot be said that any prejudice arising from admission of this evidence would substantially outweigh its probative value. Evidence that Orton was a resident of the SPTP only informed the jury of his confinement in a specific care and treatment facility, a fact that Orton concedes "would have taken some effort" to keep from the jury. The district court instructed the jury—both before and after the presentation of evidence—that neither Orton's criminal history nor the reason that he was a resident of the SPTP was relevant to their determination. A jury is presumed to follow the instructions given to it. See *State v. Wilson*, 295 Kan. 605, 621, 289 P.3d 1082 (2012). The district court did not abuse its discretion in admitting this evidence. Therefore, the court properly denied Orton's motion in limine.

Affirmed.